Good morning, Your Honor. My name is David Laughton. May it please the Court, I'm here on behalf of Plaintiff Appellant Frank Cammarata doing business as Cammarata Associates. I'd like to reserve two minutes if possible. This case is about a commission agreement between Frank Cammarata and the defendants Michael Kelly and his company Kelly Capital, LLC. Under the original commission agreement, Mr. Cammarata was paid commission upon the close of escrow when the defendants, Assanee, purchased escrow releases from S&M Tobacco. Under the first amendment to the commission agreement, defendants paid $13.6 million for escrow releases which have a future value of $40 million and were able to collect interest on the escrow releases until they mature. For his part, Mr. Cammarata received defendants' commitment that they would pay him 5% commission on the $13.6 million, which is $680,000, upon the sale, conveyance, and or transfer of the escrow releases to a third party end user or financial institution. It is undisputed by all the parties that the first amendment does not have a specific date for defendants to sell, convey, or transfer the escrow releases or a specific date for Cammarata to be paid. Defendants have maintained that they have not sold, conveyed, or transferred the escrow releases, and all parties agree that Cammarata has not been paid. Okay. And do all parties also agree that there's been no sale? Well, that was a question for declaratory relief, Your Honor, was whether there was a sale, conveyance, or transfer. And it appears that there was a conveyance or transfer of the escrow releases on January 1st, 2012. That's when it happened. My client didn't know about that happening, though, because he wasn't informed by the defendants that they're... I thought the defendants said they never sold it. And part of your defense is that because they never sold it, the period hasn't run. Where's this 2012 thing? I never saw that. The district court found, oddly, that there were two potential breaches of the contract. One was the day before the contract was actually signed. The contract was signed, the First Amendment, actually, is what it's called, was signed on July 15th, 2010. Right. The district court found that on July 14th, 2010, there was a breach, which is impossible because you can't have a breach before the contract is signed. And he said half of the commission was due. Then he said, the district court said on January 1st, 2012, there was a conveyance or transfer, and that because of that, the second half of the commission was due. The First Amendment doesn't break up how commission is paid. There's no first part or second part. And you couldn't have a breach before the contract is signed. In discovery, we obtained documents that showed that there was some secret dealings between the defendants and a third party, and that there was a transfer. And we got that just through discovery. And we only got that as a result of the order granting the motion to compel. It's not information that my client could have had at any point earlier. But those conveyance documents showed that there was a loan, essentially, made to the defendants, and the defendants... I'm really quite confused. The district court didn't make any findings about whether there were breaches of contract, did it? It did. Yes, Your Honor. Where? At Not in the E.R. Appendix to the brief. Appendix 3 would be the order of the court? The opening brief? Yes, Your Honor. And as to count 7... Pardon me, as to... What the court said is that there was a... It did it as to the fraud allegation. And what it said was that there was a breach prior to... Actually, it's page 16. It says the... Under this interpretation, the triggering event for partial payment of plaintiff's commission occurred on July 14, 2010, when Kelly Capital transferred... You can't say there was a breach. You said under the allegations that there would have been a breach at that point. Under that interpretation is what the court is saying. Yeah. Right. Not that there was one. He wasn't making merits to termination. He hasn't done that. I understand. I understand. All right. Well, that's not what you said. Go ahead. Well, the court is interpreting the complaint and saying that there was... Right. That's what he's doing, interpreting the complaint, which we can do for ourselves. But go ahead. And saying that there was a 50 percent interest transfer, which would be a breach. I mean, if you sell, convey, or transfer the escrow releases, that's the performance that's triggering the payment by the defendants. That's when... Well, but this was a... The only transfer that we know about was a transfer from one controlled entity to another one. I'm sorry. From one what? Controlled entity. In other words, to an affiliated entity. And whether that was a breach or not is a substantive question. It is a substantive question. And that's what we asked for in declaratory relief. We wanted to know whether there had been a transfer and whether the party who had the escrow releases now... That was a transfer of the kind that would have triggered the commission. Yes. That's what we were asking in declaratory relief. Has there been a transfer? Is there a third party end user who has the escrow releases? Right. And what's the 2012 date? Where does that come from? It's in the same paragraph, page 16 of the court's order. It said the second triggering event for the remainder of Plaintiff's Commission occurred on January 1st, 2012, when Kelly Capital's interest in the other 50 percent of the second tranche of escrow releases and its .00649 percent interest in Kelly Escrow were transferred to HCFLLC. So the escrow releases were the only asset that was hold by Kelly Escrow. And on January 1st, 2012, it lost all its interest in those escrow releases and they transferred to HCFLLC. The asset is gone. The escrow releases are gone. So that's the second date. And what's HCFLLC? This is all from the complaint, though. We're just talking about the complaint. HCFLLC is an entity... It's not named in the complaint, HCFLLC. We didn't know about HCFLLC at the time of the filing of the complaint. This was obtained through discovery. We only got this information after the court granted our motion to compel. Once the court granted the motion to compel, we got the documents that we could use in this case, which showed that there had been a transfer. The defendants filed a motion for summary judgment. And what's important here is the burden of proof initially, and I'd like to get to it. Before you get to that, you filed the complaint in February 2017, and I think most of these claims of causes of actions have a statute of limitations of three-year period. And the dates we've been discussing, 2010 or 2012, I mean, how do you square that when it was more than three years? I can square that. The complaint does not allege a breach... There are two things. There are the fraud-based complaints, which have the three-year statute of limitations, and there's the breach of contract complaints, which have a four-year statute of limitations. As to the breach of contract, it's... Pardon me. As to the statute of limitations, it's the defendant's burden of proof on statute of limitations to show that there is an accrual period, which means a breach, and that the statute of limitations expired. But didn't the district court assume just your version of what had happened and use that as a basis, so basically in your favor in terms of calculating the statute of limitations? No. And the court can't do that. The court can't look at my opposition papers to form... I think you looked at your complaint and accepted your allegations in determining that. No, the court didn't do that either. And that's the argument raised by the defendants in this case is the court accepted our argument and based on accepting our... Pardon me. Accepted the complaint based on the complaint, then picked a date, but that's not what the court said. The court actually said nowhere in the face of the complaint can I find a triggering event, which means you can't find a breach. When the court says under this interpretation, I've read that to mean under your interpretation, under your version of the facts, and the court then moved on from that predicate. Again, for the court to look at my opposition papers would be not what you can do on statute of limitations grounds. So what do you want us to do? What are we supposed to be looking at? Well... The complaint? No. Not the complaint. Why? For the burden of proof, the defendants have to present evidence for statute of limitations. They presented the complaint, they presented a declaration of Michael Kelly, and they presented a transcript. I filed motions to strike the transcript because it was a transcript of my client in a different case. The declaration of... Was that granted or denied? Neither. Neither. The court in footnote... Said it didn't endure. In footnote 2, 1 and 2, the court said he... And it's very confusing. In footnote 1 and 2, the court says, Plaintiff filed an ex parte motion to file a cert reply and strike new... There was another transcript submitted to strike new evidence raised in the defendant's reply. Their objections and plaint... Pardon me, the objections and plaintiff's ex parte motion are fully briefed because none of the contested evidence affects the court's conclusion. Plaintiff's ex parte motion is granted. This is as to different evidence. As to its request to strike the evidence presented in defendant's reply and denied as this request to file a cert reply, and the court declines to rule on the remaining evidentiary objections. So the court didn't rule on any of the evidentiary objections at all. And then goes on and... But it sounds like because the court found that the contested evidence does not affect its conclusion. Apparently. But then the court says in footnote 2, the court's reference to certain pieces of evidence is not an indication that it is the only pertinent evidence. I don't know what evidence that would be because the court didn't rule. I filed motions to strike the evidence, except for the complaint, essentially, and certain paragraphs of the declaration I didn't move to strike. So I'm not sure what the court relied on. If the court is relying on the complaint alone, well, let me step back. I didn't move to strike the declaration of Michael Kelly, which said that the 60 to 90 days allegation didn't become part of the complaint. The declaration of Michael Kelly says there's been no breach. We haven't transferred. We haven't conveyed. We don't know any money yet. This complaint is premature. But the complaint does have the 60 to 90 day in it. It does have 60 to 90 days in it. It's in the complaint. It is in the complaint. There is a statement of 60 to 90 days, but not saying that there was a breach of contract after 90 days. Nowhere in the complaint does it say that. All right. So one possibility, just to get out of the trees a little bit, one possibility for the breach is 60 to 90 days. Another possibility is something having to do with this Virginia – I'm sorry if you can't hear me – with this Virginia lawsuit. Is that what – this HCF thing is coming out of the sky. I don't know anything about it. It doesn't appear in any piece of paper I see. But I do see a discussion of this Virginia lawsuit and of that being some – leading you to some knowledge of something or other. 60 to 90 days. I'm saying that's one possibility. Another possibility is some 2012 date that comes – that's related to the Virginia lawsuit. Right? What is that? Is that where this HCF thing comes from? Can I – I'll address all three of those. No. Let's do one at a time. Yes, ma'am. Okay. The 60 to 90 days you say isn't a breach, but there is something in the complaint that deals with it. All right. That's one possible – one possible date. All right. You say it isn't a date, but it's a possible date. No, ma'am. It's not. All right. Then we're not going to get into that. Your Honor, 60 to 90 days is not a possible date. Okay. And the reason why it's not a possible date is because all of the parties have said it's not a possible date. The defendants have said in their declaration that it's not a possible date of Michael Kelly. The testimony of Michael Kelly on behalf of Kelly Capital said the 60 to 90 days is not a possible date. Well, if we're not going to survey at least what the hypothetical possibilities are, we're not going to get anywhere. So let's leave that one out of it. Okay. Let's get to 2012. What date are you relying on in 2012? Or are you relying on no date? Or ultimately, what date are you relying on? What date is the trigger date? The trigger date for the breach of contract would have been January 1, 2012. That's our understanding. And what happened on January 1, 2012? January 1, 2012, Kelly Escrow transferred the escrow releases to HCF LLC. But then you don't comply with the statute of limitations? We do. We do. Why? Because there's a four-year statute of limitations. Right. January 1, 2012. Then on January 1, 2016 would be the end of the statute of limitations. Right. And you filed in a year later or more than a year later? No. Okay. So the case was filed in New Jersey on January 19, 2016, 18 days after the statute of limitations expired in New Jersey. Under California law, the statute of limitations is told once there's a case. Okay. We filed in February a year later. But the statute of limitations is told during that period of time. The only period of time that we're looking at is 18 days. And why is it told? Why? Why is it told? It's told after the New Jersey complaint is filed under California law. California law says, and this was not raised in the motion. But the first one wasn't timely filed. The first one in New Jersey. In New Jersey. If we use the January 1, 2012 date, then it's not timely filed and you have to look at the discovery rule. Then the discovery rule applies. Should they have filed 18 days earlier under the discovery rule? The district court never looked at that. The district court never looked to see whether they should have filed 18 days earlier. That's exactly right, Your Honor. And tell me how the discovery rule applies. The discovery rule would apply. You think there's a year that is covered by the discovery rule? No. After this HCF thing. 18 days, Your Honor. But you were a year late. I think the argument is, and I hadn't appreciated this, is that you'd filed a complaint in New Jersey. That told not because the discovery rule doesn't told a year. It's the filing of the complaint in New Jersey that told it for a year. That still leaves you deficient 18 days. The question is, why does the discovery rule apply to 18 days? We don't know that. But the district court didn't consider it. That's your argument? Didn't consider it. That's right. Didn't consider it. And we didn't have a decision that there was a transfer, conveyance, or sale of the escrow releases on January 1, 2012 until the court referenced it. When did you become aware? When did they become aware? Well, the first time we saw the documents is after the court granted our motion to compel. But you're saying then that the statute of limitations didn't even start accruing because of the discovery rule until after you filed the complaint. What? Because you're saying you didn't become aware. That's right. We didn't know. That's a little bit of a harder argument. Part of the reason for the declaratory. I mean, if you didn't have a reason to believe there was a breach, then why did you file the complaint? We filed a declaratory relief. Part of the reason we filed a declaratory relief action was to say. Was it declaratory relief in New Jersey? Well, I think they had filed it in New Jersey, and we also filed it in California. And we said, we don't know what's going on with these escrow releases, and the defendant's position is we haven't. And they still say that that January 1, 2012 conveyance to HCF, they say that's not a transfer, sale, or conveyance. They still maintain until today that there has been no sale, no transfer, no conveyance. If that's the case, you can't breach a statute of limitations. It's premature. You also can't breach a contract. You also can't breach a contract. So you have no case. And if that's the case, then if they haven't sold, conveyed, or transferred, then we're premature. If that's the truth, then we're premature, and we get to file another day when they do sell, transfer, or convey. But that's why we ask in the declaratory relief action, let us know, has what they've done, is it a transfer, conveyance, or sale? They're saying it's not. We're saying something has happened. It's been years. And they still maintain. But you can't argue in a summary judgment motion under statute of limitations that there's been a breach of statute of limitations because the complaint is premature and submit a declaration saying the complaint is premature and submit a declaration and also argue that there's been a breach of contract. All right. You're well over your time. Thank you very much, Your Honor. Good morning, Your Honors. May it please the Court, Alexander Kessler for the respondents. Your Honors, let me try to get us away from the trees for just a minute here. In April 2010, Mr. Camarado was paid $500,000 for a handshake introduction. That resulted in the sale of a first tranche of escrow releases. And when it came time for the second tranche to be sold, Kelly Capital went back to Mr. Camarado and said, look, under the commission agreement, you would be owed this commission the day the second tranche closes, but we're using investor money on this deal. We can't pay you the commission. If we don't agree to modify this, we're not going to close the deal. Mr. Camarado said, fine, let's enter into this. I'll agree to enter into the First Amendment. And the terms are, when these things are securitized or resold to a third-party end user, my commission will be due. They signed that. Kelly Escrow Fund 5, which was an affiliated entity, purchased the second tranche on July 15, 2010. For various tax reasons, the second tranche was never resold. It just wasn't economically viable. Now, what is this HCF thing? So I will get to that, Your Honor. Please. HCF isn't mentioned in the complaint. It doesn't come up. And the reason is that Mr. Camarado basically waited seven years and he decided, well, I want some more money out of Kelly Capital. So he manufactured three different sets of claims. The first set is this fraudulent concealment or fraudulent inducement, which, as the court was discussing earlier, is how we get to this 60- to 90-day issue. He said, I was induced into entering into this First Amendment. By this promise, I'd be paid within 90 days. Now, obviously, as the district court found, those claims, which are the first, second, third, and sixth claims, accrued July 15, 2010. Because the representations were made before that date. The harm accrued because they otherwise would have earned a commission on that date. That's when the claim accrued. At the very best, the court said, well, you had a 90-day promise. You thought you were going to be paid by 90 days. The discovery rule would hold it at that far, but no farther. So those claims are barred. His second claim was that a commission was due and owing under the commission agreement. But the commission agreement required that he be paid on July 15, 2010, when the second tranche was purchased by Kelly Escrow. So those claims, as the panel indicated, are clearly barred as well. Now, the third claim or theory is that Kelly Escrow is actually a third-party end user. But again, the district court looked at this and said, well, if Kelly Escrow is a third-party end user, Kelly Escrow is the one that bought the second tranche on July 15, 2010. So those claims are barred as well. So what the district court did was it looked at the opposition to try to toll these claims as long as it possibly could. And what Mr. Camerata said in his opposition was, well, Kelly Capital technically was a .006% owner of Kelly Escrow, and the deal with the investor was when they would resell the second tranche, Kelly Escrow would become a 50% owner, so it would get half of the deal. And if they didn't, he would lose that. If he didn't sell it by January 1, 2012, it would lose that reversionary 50% interest or its paper .006% interest, and those would be owned by the investors. So who holds the Escrow releases now? It is undisputed that Kelly Escrow still holds the Escrow releases. If you look at Mr. Camerata's own evidence, his declaration in opposition, and that's excerpt page 109 of the record here, paragraphs 39 and 40, he admits Kelly Escrow Fund owns the Escrow releases. And your position is that your obligation to pay the commission under the First Amendment has not been triggered yet? Well, so we presented the evidence that basically these claims are a sham. Can we just go back for a second? Yes. Just so I can understand this. So if 50% disappeared on January 1, 2012 because of the arrangement with the original deal is what you're saying, so those whatever we're calling Escrow arrangements are no longer there, so it's not so much that they haven't been sold as that they don't exist? No. So, Your Honor, Kelly Escrow Fund purchased the Escrow releases. Right. And it's always owned them. There's no dispute about that. I understand that. Kelly Capital, who is the respondent in this case, owned a .006% interest in Kelly Escrow. I see. And that's what lapsed in January. Okay. So Kelly Capital lost its interest in Kelly Escrow, which continues to own the Escrow releases. I see. Right. Okay. So the district court was basically looking at everything it could to try to salvage some of these claims, and it said, okay, well, the opposition says that he lost this .006% interest. So the only thing I see that could possibly be a transfer, other than Kelly Escrow's original purchase on July 15, 2010, is this loss of this reversionary interest, which occurred on January 1, 2012. So we still haven't gotten to HCF. HCF is, I believe, the other owner of Kelly Escrow. So HCF is, I believe, the ultimate owner now of the Escrow releases, which are still held by Kelly Escrow. They're now held by HCF. That's not right. Well, technically, they're still held by Kelly Escrow. I think HCF was a 99. . . whatever the percentage works out to be, 99.3% owner of Kelly Capital prior to July. So the deal of the record is there never was a transfer to HCF. Correct. Right. There hasn't been. Everybody agrees that Kelly Escrow Fund still owns the Escrow releases. The HCF issue is prior to January 1, 2012, they owned 99.99 whatever percent. After January 1, 2012, they owned 100%. Can you address this? Because on its face, it seems like this is time-barred. Yes. That's what the district court held. That's what you've advocated. One of the things that was just said was that there was a declaratory judgment action filed. But this wasn't a declaratory judgment action, the complaint that's now up before us. Or was there one claim that was. . . It contained two claims for declaratory relief. But the other claims that were addressed by the district court were not declaratory judgment claims, right? Correct. So there were the three theories. And to be honest, the declaratory relief questions are really just restatement of breach of contract claims. Okay. So going back to New Jersey, is it true that there was a complaint filed in New Jersey addressing some of these same actions? There was a complaint filed. I do not know if it included. . . it's not part of the record. I don't know if it included a declaratory judgment relief. I think it had five causes of action. And do you agree that that would have told the statute of limitations? I do not. I don't think California law supports that. Do you have a case for that? A case that. . . That says that it doesn't. . . Not told? Yeah, because it seems intuitive to me that if somebody sues in another jurisdiction, it would toll the statute of limitations. Meaning if you sue and then it turns out that, you know, you've sued in the wrong venue, you wouldn't. . . if you ended up going to another venue, you wouldn't be barred by statute of limitations. Unfortunately, I don't have a case in front of me. I would be happy to brief that later, but I don't think it matters in this case. Well, my understanding is that California law actually is very definite about the fact that there is such tolling. But on the other hand, if the complaint is not in the record, we have no idea whether it's the same lawsuit or something completely different. Correct. Well, yeah, because the district court didn't address this, right? It wasn't raised. . . So it wasn't raised. . . This was never raised. . . Okay, well, maybe that's the answer. It wasn't raised in the district court. Yep. It wasn't raised here on appeal, Your Honor. And frankly, counsel admitted it doesn't matter. He's still 18 days short. Even if we told him. . . Well, but if it were true and if it were considered, then I think you would have to consider. . . I mean, maybe the discovery rule applies to 18 days, maybe it doesn't. But I think that the real answer is it's waived, it appears to me. Well, very good, Your Honor. I'm happy to answer any more questions on those issues. But frankly, these issues aren't what. . . Well, the one mystery, slight mystery here is what do we do with the fact that your ultimate claim is that it's never been sold, so there really isn't a limitations period problem, there's just a merits problem. Your Honor, the district court never had to get to that issue. There's a number of issues which, if I have time, I'll address that the district court could have ruled on. But essentially, the burden is on you and the limitations, right, as to limitations issues. Well, initially, and all we had to do in this case was point to the complaint because it shows that these claims are time barred. So essentially, we're looking at the claims as pled with regard to whether they're barred, and we don't worry about the fact that your ultimate position is that it's actually premature and not late. I mean, because that's your ultimate position. Correct. And as Judge Lee pointed out, the court was relying on the face of the complaint, and it's clear that these claims are barred. Let me ask you something. All right, suppose we affirm this, and then eventually these things do sell. Does he then have a lawsuit? Sitting here right now, I think he would. Frankly, I haven't really thought about that terribly deeply, but, yeah, I think he would. But, again, these aren't the issues that he's asked this court to consider. He asked eight questions that he wanted this court to answer. Well, I thought his last claim was that there's no statute of limitations because it hasn't been solved yet. Well, that claim wasn't addressed in the appeal, Your Honor, and that's not what the district court ruled anyways. The district court ruled that the claims as they are pled are barred, and he's got to live with his bleeding. So the questions he did ask this court to consider are, first of all, a lot of time was spent on this continuation of the MSJ issue. His first question in the appellate brief is, did the district court abuse its discretion by denying the request to continue the MSJ so that Mr. Camerota could obtain the 8-year-old deposition transcript of Kelly Capital's former counsel? The discovery had already closed, right? Not only had discovery closed, he'd had 16 months to conduct discovery. In this case alone, not even accounting the New Jersey case, plus he had five and a half months after the MSJ was filed to conduct discovery. Moreover, we're looking at the face of the complaint. What outside discovery in the entire world is ever going to change what's pled in the complaint? Well, we're not looking. I mean, limitations periods don't necessarily turn. We're looking at the face of the complaint to define what the claims are, not to determine what the limitations period is, right? I disagree, Your Honor. If you can tell from the complaint when the claims accrued, just based on the face, which we can in this case. Well, the complaint could be inaccurate. I mean, it could turn out after discovery that something else was the case. But the theory of the case is from the complaint, what the causes of action are and what he's claiming are the – how he's articulating the claims. Theoretically, Your Honor. But if he states, well, on July – But just theoretically. I mean, that's – it's pretty clear that – Yes, but I'm saying not in this case. Yes, certainly. But if you plead in the complaint, as he did in this case, I was induced to sign this contract that I signed on July 15th by the promise that I'd be paid within 90 days. How could you possibly read his complaint or his claim? Well, the discovery could demonstrate that he was actually promised he would be paid within 180 days. And he might say, well, I'm going to amend the complaint, but it's really 180 days. So that – And the district court pointed that out, Your Honor. He said he had five and a half months. He could have amended the complaints. He didn't – the district court actually went further than that and said he could have amended the complaint to allege – to properly allege when and how he discovered these claims. But as Judge Nelson pointed out, he didn't. We still don't know. How did he ever figure this stuff out? Why did it take seven years? What did he discover? We keep going back to this Virginia action. This Virginia action – Wait, what? No, Virginia. No, he spoke at length about this Virginia action. Oh, yeah, sorry, sorry, sorry. Which was a dispute between Kelly Capital and the tobacco company as to who owed these taxes. It didn't have anything to do with Mr. Camerota's claims. He didn't learn anything as a result of that lawsuit. He knew 90 days after he wasn't paid that there was a problem because he hadn't been paid, and that was the promise. Okay, thank you. The second question he asked his court to decide is, did the district court err by failing to hold defendants to the initial burden of proof? And, again, I think we just went through that. We're looking at the complaint. The district court did everything it possibly could. It even looked at his opposition and the evidence submitted therein to try to stretch the discovery rule as far as it could, and it could only get to January 1, 2012. Those claims are still barred. Third question was, did the district court err by refusing to rule on his evidentiary objections and thereafter base its decision on the contested evidence? And I think, as Judge Nelson pointed out, that's not what happened. He was looking at the complaint. He was looking at Mr. Camerota's evidence in opposition. There simply was not any contested evidence considered on the MSJ. The fourth issue was, did the fact that defendants submitted evidence that there was no breach create a triable issue of fact? And we kind of got into this on the argument. The answer, again, is no. Simply because we argued that these are really sham claims and that there has been no breach. That doesn't mean there's a triable issue of fact as to when these claims accrued. The example is, if he alleged that my client burglarized his home and stole the Mona Lisa, we don't have to prove that he owns the home, that it was burglarized, that he owned the Mona Lisa. We're assuming, based on the face of the complaint, that those claims are true. And if so, they're barred. The fifth question he asked this court to consider was, did the court err by finding every claim accrued 91 days after the execution of the First Amendment? And that's just not what the district court found. If you go through the complaint, which we did in our opposition, in our answering brief, it's clear that, really, these claims accrued July 15, 2010, under his theories in the complaint. Okay, thank you very much. Thank you, Your Honor. I have 30 seconds, Your Honor. 30 seconds. Because you went over your argument to begin with. Thank you, Your Honors. First of all, as far as the retail clerks is the case that stays the statute of limitations. New Jersey, but it's not before us. It was cited, and they actually argued against it. I know counsel said it wasn't in the appellate brief. It actually was. Did you raise it to the district court? I couldn't because we didn't have that date. The judge gave us the January 1, 2012 date. He made that finding, and I raised it in my brief. I explain how, if it's not raised in the brief, but you only get it for the first time by the order, then you can address it. As far as discovery, he said discovery was closed. It was not closed. I still had time for discovery. I had orders from Judge Shopler, the magistrate judge, continuing our discovery because they had abused the discovery. I still had time remaining on discovery. We've stipulated to continue the motion for summary judgment because he was still abusing discovery, still hiding discovery, and he got caught. I called him. He agreed to continue the motion for summary judgment, and then that motion got denied. I still had time left on my discovery. So his statement that I didn't have time, it's not true. Okay, your time's up. Thank you very much. Thank you both for your argument. Camerata v. Kelly Capital is submitted, and we'll go to the last case of the day, Carr v. Auto Nation.
judges: Berzon, Nelson, Lee